The Illinois Appellate Court, 5th Division, is now in session. Honorable Justice Mathias, the Court, is presiding. Good morning. Please be seated. The Clerk will call the first case. 121-1370 is the liquidation of Legion Indemnity. Good morning, everyone. Welcome to the Illinois Appellate Court, 1st District, 5th Division. We'll ask the lawyers who are going to argue this case, please step up briefly to introduce yourselves. Who are the appellant? Jennifer Arnold, from Novak Law. All right. And? Good morning, Your Honors. Patrick Morales Doyle, from Thompson & Coburn, on behalf of the Director of Insurance. All right. Thank you. Thank you. All right. We'll allow 20 minutes for each side to argue, an extra 5 minutes for the appellant to reply. Please understand, we have read the briefs in this rather obscure kind of a case, so we don't need to have the facts repeated to us. In this Court, we tend to have a lot of questions, and that's probably what we're going to spend most of our time on. I will keep time, and I'll give you some kind of a little warning before we have to close you out. But if we have a lot of questions, obviously, we'll extend that. All right? With that, counsel for appellant Ms. Arnold, you may proceed when ready. I'm right in front of me. May it please the Court. My name is Jennifer Arnold, and I'm here on behalf of Catalina Buildings Bermuda Limited in this matter. And as Your Honor just stated, as you see, the facts and procedural history of this case are rather convoluted. But the question before the Court today is actually very simple. It's just a question of statutory construction. What does the term costs and expenses of administration mean? We take it as generally accepted. First rule of statutory construction is that you look at the words and you take their plain meaning. Costs and expenses of administration are costs and expenses that you incur while managing the estate or part of the estate. And that is exactly what happened here. The cost award was issued as a direct result of the liquidators demanding arbitration despite the facts and circumstances of this case. After hearing all of those facts and circumstances, the panel concluded it was unreasonable for Catalina to have to respond and defend the arbitration. In the court below, excuse me, let me just The circuit court wrongly concluded that the cost judgment arose from a contractual dispute over unpaid premiums, which predated the Legion liquidation and a shifting of fees by the arbitration panel pursuant to the cost provision in the reinsurance contract. Each step of the court's statement and analysis of this claim was incorrect. The arbitration was not a dispute over unpaid premiums. This arbitration was bought by Legion to recover claims under the treaty or late notice claims under the treaty. Catalina's claim for unpaid premiums was merely a counterclaim and would not have been brought had the liquidator not demanded arbitration. Ms. Arnold, in the end, how much money are we really talking about here? You know, we've got this fight over priority, and that signals to us that there may not be enough money left in the pool if your claim is at a lower priority than if it was at the higher priority that you're urging upon us. Is that correct at this stage? Is there not enough money left if you end up with a Class G claim? There's not enough money left if you end up as a Class G late filed claim. All of the original timely filed claims in all classes have been paid. All of the late filed claims in all classes but Class G have been paid. And I take it so that somebody has quantified how much is left and there's not enough for this particular? There's not enough to pay this particular claim at 100% plus every other late filed G claim at 100%. But if you jumped up the ladder and became an A claim, you just paid your full? I'm sorry, Your Honor. I wouldn't necessarily call it jumping up the ladder, but yes. If this is a cost and expense of administration, then it has to be paid at level A because the liquidation priority scheme requires all costs and expense of litigation to be paid by A and that's mandatory. And it looks from my reading of the record, we're talking somewhere in the area of $100,000. Is that correct or am I not seeing you? I believe we're actually talking about a little over $500,000 just for the cost judgment. About $75,000 was unpaid premium that Catalina was owed. However, we have actually fully agreed that that is a level G claim because we are entitled to that money because of a contractual right. We were owed it under the contract and under the law in Illinois, money due under a reinsurance contract is the claim of a general creditor. What distinguishes the cost judgment from the premium is when and how the debt arose. At the time of liquidation, Catalina did not have any claim against Legion. The facts actually even leading up to the arbitration hadn't existed because the claims had not even been noticed to Legion, let alone the liquidator failing to give notice as required by the statute. How do you distinguish the Nicholas case? I'm sorry? How do you distinguish the Nicholas case? I think the other side relies on the Supreme Court. Do you have the full name? I'm sorry, I don't know if I got it. The air conditioning is so loud that it's kind of hard to hear right now. Are we American? Go ahead, counsel. Let me get back to that, all right? Okay. The difference is, in an American way, those claims arose pre-liquidation. They were actually incurred by the company before it was liquidated. Here, the actual basis for the liability for this cost award was actions by the liquidator. It was based on the liquidator's failure to follow the statutory requirements and give proper notice, and it was based on the liquidator's decision to demand arbitration, even though it knew it did not provide proper notice, in that there was no evidence of any correspondence with Catalina, and its own claim handlers testified that Catalina was not giving notice of the claims. So based on, and then based on the timing and when it happened. Would your counterclaim have been, would your counterclaim also fall under that category you're saying, of being a pre-liquidation debt? Yes, the unpaid premium was awarded on our counterclaim, and that would be a pre-liquidation debt. It was derived entirely from the contract that was formed with Legion before the contract. All of the rights and liabilities or obligations that we have to that money were already in place on the day of liquidation. Okay. So that would fall under, that would fall under the NRA reserves? That's correct, and that is the claim that we filed in the liquidation. We submitted the proof of claims. It was given level G status, and we did not object to that. Okay. The other, in addition in what takes us out of the American Reinsurance case, two, from what the court said, there is no fee shifting provision in our contract. Nothing in the contract between Catalina and Legion requires the panel to order fees to the winning party. The contract simply says the panel may award interests and costs if it chooses. In Illinois, there's several bases for the authority given to a panel. One is the contract. The other is the submission of the parties to the panel. In this case, the liquidator demanded arbitration asking for attorney's fees and costs. During the arbitration, they continued to ask the panel for any relief the panel saw fit. When parties agree to submit the issue of attorney's fees to the panel, the panel is granted the authority to decide them independent of the contract. And that is, that may be what happened in this case. We had an unreasoned award, so I can't say for sure what the panel was basing their award on, but there was more than one option. And so then, you're saying once the arbitration panel awarded those fees, now that makes it a category or a Class A or Priority A claim? I would say once the judgment was confirmed, and we actually had a judgment against the liquidator. That was by the district court? Yes, that was by the district court. The arbitration award was confirmed. Yes, it would be an expensive administration. And the reason being for that is this arbitration was brought specifically to benefit the estate. It was brought to attempt to increase the amount of assets the estate had. And when a liquidator or trustee acts on behalf of the estate to increase its assets, it needs to take the good with that. Otherwise, the liquidator could just bring any lawsuit, no matter how much merit it had, on a slim chance that it could win and receive an award, because there would be no retribution for bringing a false claim because it would always fall under Level G, under their theory. But isn't it, that's the job of the liquidator then, to resolve any outstanding claims. And if they're, look, they're putting it out there. Here's these claims that are possibly out there. They're trying to resolve these, and that's the way to do it in an arbitration. That's what is spelled out in the contract, that these have to be resolved by arbitration. While not necessarily an issue in this particular case, there is debate about whether or not the liquidator has to abide by arbitration provisions when they take over the reinsurance contracts. But yes, in this case, our contracts did require arbitration. However, the liquidator is the one that made the decision to demand arbitration and to decide which claims would be brought. And all litigants should be held to the same standard. All litigants should have to ask themselves, am I bringing a reasonable claim? Is there a legitimate basis for this claim? And in this case, after seeing the facts and hearing the arguments, the panel determined it was unreasonable for the claim to be brought. And that is why it awarded fees. And no one has any other questions right at the moment. I'd like to just briefly jump ahead to interest, if that's all right. Yes, I just asked you to do that. Oh, okay. There are several different steps in the interest question.  Are we entitled to interest on the judgment? And under Illinois 735 ILCS 5-2-1303, interest at 9% must be awarded on judgments of any court. It's not discretionary. We have a judgment from the Northern District of Illinois. When that judgment was issued, it automatically began accruing interest under Illinois law. Now, there is a fixing provision in the liquidation statute, which is why we have stopped our calculation of interest when the claim was moved for allowance in the liquidation proceeding. Once the claim had been allowed by the liquidation court, we are not seeking interest anymore. Okay. So that's... So, because initially in the circuit court and in your opening brief, you were asking for interest up until paying, like through today, basically. But in your reply brief then, that's when you asked for it through September 27th of 21. That's where you're at today? Yes. It was also something that we proposed to the court in oral argument in the circuit court. Okay. Your opponents are relying on what I'll call the chancery exception to the automatic 9% interest under the CODISO procedure. And there does seem to be case law supporting what the circuit court did in terms of its determination of where to hold interest. Why do you believe that that case law is not applicable? I believe you need to look at the judgment that you're discussing. In this case, we're not talking about a judgment of the chancery court. We're talking about a judgment entered by the Northern District. The chancery division has complete discretion to award interest on awards that they make, on judgments that they make. But this was not a judgment of the chancery court. It started earning interest immediately after the Northern District granted the award. What was the reason that there was a decision made to get the arbitration judgment converted into a court judgment in the federal court, and then take that judgment over to the circuit court to miscellaneous remedies? I didn't quite figure out why that was done that way. Catalina is domiciled in Bermuda. So the arbitration was governed by the New York Convention, which governs the entry of arbitration awards between citizens of the United States and citizens of any other country that is a party to the treaty. And that has subject matter jurisdiction in the federal courts. But I return to the question about the chancery exception. You see, it wasn't a judgment of the chancery court, but we are in the case number on the cover of the brief is a chancery number. This liquidation is an equitable proceeding. And that's what I think the circuit court reasoned in terms of applying the exception. I think we have to look at the actual facts that were in front of us. This case could have been brought in chancery court. The award could have been confirmed or vacated by the chancery court. The liquidator did not file to vacate or confirm the award in chancery court. So after two weeks, Catalina filed in the federal court, which tends to be more favorable to foreign claimants. More favorable to foreign claimants. Than the liquidation court is. So it was... You have about three minutes left. I'm sorry? You have about three minutes left. And then the last part of that would be, I guess let me for a second just say, the reasons Pine Top did not allow interest in liquidation cases. It gave three policy reasons. The liquidator did not have the ability to immediately pay claims. The constant recalculation of interest would be an administrative inconvenience. And creditors would be unfairly treated if they gained or lost on the date of payment. These are not present in the situation that we have here. The liquidator does have control over when a claim is going to be moved to allow... When they're going to move to allow a claim in the liquidation proceedings. And because interest is determined on the day of allowance, it's only determined once. It doesn't need to be constantly recapitulated. And again, it not being based on the date of actual payment, the creditors are not treated unfairly depending on when their claim may be paid during the space of the liquidation. And then finally, we would argue that the interest is... should be awarded the same priority as the cost judgment itself, because the interest and the adjudgment are part and parcel of the same thing. They're not two separate awards. The interest accrues on the award. It has not been decided in Illinois court, but other courts have concluded that when... When an award is issued against a trustee, both the award and the interest on the award should be paid out as an administrative expense. And we would argue that that is the best rule in this case to make Catalina whole, because Catalina was the innocent party in this situation, being that we did not even learn of the claims until eight years after the deadline closed for filing timely claims. So we were completely unable to file a timely claim in this case during our call of our own. Let's see if we have any other questions from the panel. No. All right. Thank you, counsel. Mr. Morales-Doyle. Excuse me. You guys need to speak into the microphone. We need to speak right into the microphone. Oh, okay. All right. Sorry about that. A little technical glitch. We're going to urge you to speak right into the microphone because the ventilation is so loud today. We're not picking up well on the recording, all right? Okay. Please let me know if during any portion of my argument you cannot hear me. May it please the court, Patrick Morales-Doyle, on behalf of the Illinois Director of Insurance, solely in her capacity as liquidator of Legion Indemnity Company. The court should affirm the circuit court's judgment in full because the circuit court correctly allowed the entirety of Catalina's claim to be a PG based on the plain language of the statutory priority scheme in controlling case law. And second, the circuit court correctly denied Catalina's request to add post-judgment interest to its claim also based on controlling case law, the Pine Top case that counsel mentioned. This case is controlled by the statutory language which both the liquidator and the liquidation court must follow. And the controlling case law, not analogies to bankruptcy cases or anything else. On both issues, there's authority interpreting Article 13 of the Illinois Insurance Code that is directly on point. So from the liquidator's perspective, it's a clear matter of statutory interpretation and applying the established case law. Do you agree that this, at least for the first issue, not the non-interest related issue, in other words the priority issue, that this is a case of first impression for an Illinois state court? It presents a unique factual situation, but I'm not sure I would describe it as a case of first impression because ultimately Catalina's claim, the entirety of Catalina's claim, is a claim that arises under a reinsurance agreement. And what we refer to as the American reinsurance case in our briefs, what American reinsurance stands for in relation to this case is that a reinsurance agreement is the same as any other non-insurance contract. It's a contract that Legion, the insurance company in liquidation, entered into, in this case there was a number of reinsurance treaties that it entered into with Catalina subsidiaries and other reinsurers, and it gets treated just like any other contract claim, which is a level G general creditor's claim. Counsel, help us out a little bit on terminology. Both sides are using the word treaty. Is that simply just another fancy way of saying a contract? Or is there a nuance to it we're not getting? I'm not sure if there's a specific nuance, other than these reinsurance agreements are complicated contracts that involve a number of different reinsurers and are referred to as treaties. To that point, I think it might make sense, because I think some of the argument gets kind of far afield from the legal issues, to just go through a little bit of the background of reinsurance, how it fits into the liquidation, and how Catalina's claim came to be in this case. Because I think that context kind of provides an explanation for why it's a level G claim and why the issues about timing that Catalina has raised really don't end up mattering to the resolution of the case. So, as the Supreme Court defined reinsurance in the American Reinsurance case, and that's American Reinsurance v. Washburn, 122 ill second 555, a reinsurance agreement is an agreement between insurance companies whereby the insurer may accept any part or all of any risks of the kind which it is authorized to insure, and the reinsured cedes all or any part of its risk to another solvent company. So an insurer lays off some of the risk that it has taken on by writing insurance policies, and other insurance companies, the reinsurers, agree to take on that risk if claims are made successfully under those policies. The court went on to say, an agreement of reinsurance is a promise by one insurance company to reimburse the original insurer should it be compelled to pay under the policy of direct insurance the insured who suffered the original loss. So reinsurance is sort of a specific area, and it interacts with the liquidation under Article 13 in a specific way. 215 ILCS 5 slash 193, that outlines the duties of the director of insurance when the director of insurance is appointed by a court, as is the case here, to liquidate an insurance company. And what it says is when a company goes into liquidation, so this is subsection 8, 215 ILCS 5, 193 subsection 8, the amount recoverable by the director of formal reinsurance should not be reduced or diminished as a result of the entry of an order of liquidation. So essentially, reinsurance agreements remain in effect. The company goes into liquidation, it doesn't absolve the reinsurer from its obligations under these treaties. Subsection A to that says, upon the entry of an order of liquidation, and notwithstanding the director's failure to pay all or a portion of a claim, the reinsurance obligation shall be due and owing to the director on the basis of claims allowed in the liquidation proceeding. In other words, the company enters into liquidation, thousands of claims come in, and the director, in her capacity as liquidator, is adjusting these claims, is evaluating these claims. Some claims the liquidator recommends to the court should be allowed. Some claims the liquidator recommends to the court should be denied. The liquidator is taking steps to marshal the assets of the estate. And that's just what happened here. So the order of liquidation was entered, the director is appointed liquidator, thousands of claims are coming in, and what happens when those claims come in to the estate, and some of them are allowed, is it triggers reinsurance obligations. So of course this all happened after claims were allowed in the liquidation, because that's what triggered the responsibility, the contractual obligations, of parties like Catalina and others. And some of those claims are traditional claims by insurers for loss under their insurance policies, correct? Absolutely. And other claims are more or less accounts payable of the company for the normal cost of doing business, which would include premiums to a reinsurer, is that also correct? I believe that's exactly right, Your Honor. So level D of the priority scheme, specifically, and E as well, but mainly D, is the priority level for claims by insurers, beneficiaries, policyholders, claims against insurers. So that's basically you had insurance, or you had a claim against an insurance policy that Legion issued, that's where your level comes in. So those claims come in, claims by people who had a Legion policy, claims by beneficiaries of those policies, et cetera, and depending on what claims come in and what claims are allowed, that triggers certain obligations under reinsurance treaties. And you can take a look at, there's a couple of the treaties that are there in full in the record. They're complicated contracts. They involve a bunch of different parties. So in this case, yes? What are the notifications requirements? Under to, from the liquidator to their reinsurers. From the liquidator to potential claimants. Yeah, so, but, well, there's a specific section, 215 ILCS 51938B, provides for the director's obligation to provide reinsurance with notice. And that was the issue in the underlying arbitration. So just to step back into the procedural history, the claims came in, it triggered reinsurance obligations, the liquidator reached out to various reinsurers and said, hey, you need to pay X, Y, and Z. That included Catalina under this group of six treaties. And that included other reinsurers under those treaties as well. And as a matter of fact, those reinsurers paid under those treaties. But Catalina responded and said, hey, wait, no, we actually have a defense. Not that these claims allowed in the liquidation don't trigger our reinsurance obligations, that they don't cover them, but you didn't provide us with the proper notice. You didn't pay X to the claim. And they also had a counterclaim that said actually you owe us a premium too. And so that was what was arbitrated. And, but just as an example, those other reinsurers who paid claims out, they obviously incurred expenses and costs in dealing with the liquidator. All kinds of parties incur costs and expenses in their dealings with the liquidator. Whether it's the Norwegian estate or whether the estate has a claim against them or in this case, both. Those costs and expenses of third parties are not what's covered by Level A. So, Catalina prevailed at the arbitration. The panel entered an award finding on their counterclaim and awarding costs based on the cost provision in the arbitration agreement. And we can get to that specifically. So they prevailed on both issues at the arbitration or just on the counterclaim? On both issues. Yes. So the liquidator's claim was denied. Catalina prevailed and based on the cost shifting provision in the treaties, the panel awarded Catalina those costs. So that's why very simply, it's a claim under a contract. The only basis for awarding the costs was the contract language of cost shifting. So at that point, and this gets at one of the questions just as to the work that you asked opposing counsel, with that arbitration award in hand, there was nothing stopping Catalina from filing a claim in the liquidation for the entirety of the award, both the premium portion and the cost portion. Did they choose to file a claim saying, hey look, under the plain language of the statute, these costs and expenses are a level A claim? No. They did not do that. In fact, they never did that. Was there some kind of strategic or legal reason why they wanted to have it converted into a, the arbitration judgment converted into a court judgment? I think there were and I think counsel sort of referred to it in saying that we thought the federal court would be a more favorable forum. I'm not sure exactly what that meant, but I think there was a strategic choice and the strategic choice then plays out in the procedural history because what Catalina does after getting the federal, the arbitration award confirmed in federal court and again, the federal court's language is absolutely clear and I can quote it word for word that the basis of affirming, confirming the cost portion of the award, again, was the contract language. That was the basis for confirming the award was the cost-shifting language in the reinsurance treaties. Well, so, what does it matter whether it's confirmed by the federal district court or filed before the liquidation court? At the end of the day, the arbitration award was the arbitration award. So what is, what's the advantage that they're getting 9% interest then from the point of entry from the district court? Well, that's, that's what they're trying to use it for right now. What they tried to use it for immediately after the confirmation of the award was they didn't, again, they didn't bring, Catalina did not bring a claim for the cost portion of the arbitration award or the cost portion of the judgment in the liquidation proceeding. So, the federal court confirms the award and instead of, at that point, like they could have before, Catalina doesn't say, here's our claim under Level A. Instead, Catalina files just a claim under Level G for the unpaid premium portion. And instead, they take that federal court judgment and they file citation proceedings against the Director of Insurance personally and say, this isn't even an obligation of the estate. This is a personal judgment against the Director of Insurance and we get to collect against the Director of Insurance. So, I think that may have been the strategic reason why they went to federal court to confirm the judgment. They wanted a court judgment to try to pursue post-judgment collection proceedings which is improper and which were dismissed by another circuit court judge and which was not appealed. So, while they're trying to pursue citation proceedings against the Director of Insurance, the liquidator, at that point, says, sure, they filed their portion of their claim as Level G. They haven't filed a claim for the rest of their arbitration award. We know that claim is out there. We're going to file a claim in full at Level G because that's where it belongs. At that point, Catalina moves to stay that and continue to pursue the citation proceedings and it's only once the liquidator is able to get the citation proceedings dismissed does Catalina eventually come into the liquidation proceedings and brief the priority issue that is before the court. And I would just say, if it was so obvious under the plain language of the statute that the cost portion of the arbitration award is a Level A claim, then Catalina would have pursued that from the get-go and not gone through all these other obstacles to try to collect it in some other way. It illustrates that. You've got about five minutes left so let me ask you to answer this question. Do you agree with the characterization that the case law that is bandied about by the party seems to be mostly in the field of divorce? Do you agree with that characterization? I'm familiar with that case law to a certain degree, yes, Your Honor. And I'm wondering if you'd respond to your opponent's argument as to why their position is that they're entitled to the 9% interest continuing to accrue and you take the opposite position. Yes, Your Honor. What's your response to their argument? That this issue has already been decided by this court in the Pinetop Insurance case, a claimant against the estate, the liquidating estate, they pursued their claim and the claim, they prevailed on the merits of their claim, so now they have a claim against the estate and they said that allowance qualifies as a judgment and so we're entitled to post-judgment interest. Now, in their reply brief, Catalina tries to distinguish Pinetop and say that was about post-allowance interest and not post-judgment interest, but if you read the Pinetop decision, there's sort of a couple steps to the analysis. The first step is, does the allowance of the claim count as a judgment under the post-judgment interest statute? And on that part of the argument, this court said yes, the allowance of the claim in the liquidation proceedings is a judgment for purposes of post-judgment interest statute, but then the next step was, do judgments, notwithstanding the language of the post-judgment interest statute, when you're in a liquidation proceeding under Article 13 of the Insurance Code, are you entitled to post-judgment interest? And the court concluded no and gave a number of both statutory and policy reasons why it would be improper to apply post-judgment interest to claims against a liquidating insurance company, and all of those reasons apply equally here. It would cause chaos if parties could jockey for position and the amount of their claim would change based on the procedural steps they take. Just going on what counsel said here, they chose to go have this arbitration award, which they could have used to file a claim against the estate at that point in time, and instead went to federal court  perceived tactical advantage and then got it confirmed as a judgment and now are claiming interest and then didn't even file a claim at that point against the estate, pursued citation proceedings, moved to stay the liquidator's efforts to get their claim allowed and claim interest accrued all that time. That's the type of sort of jockeying for position that isn't allowed and shouldn't be permitted under the priority scheme. You've got about a minute left, so I'll ask you to bring your remarks to a conclusion and we'll see if we have any other questions from the panel. Thank you, thank you, your honor. I will do so. So I think I'll return to the main issue in the case because I think Pine Top covers the interest issue completely, but on the priority claim, what this isn't about, it's not about the merits of Catalina's claim that was litigated in arbitration. That is not something that can be determined by the liquidator or by the liquidation court in determining a priority level. I'm going to quote from, it's actually in Reliquidation of Legion Indemnity Company, 2013, Illinois Appellate First, 120980. The code is designed to protect the rights of all interested parties while also providing an orderly and efficient procedure for liquidating insurance companies. The comprehensive nature of the code reflects the rationale under the code's procedures to provide a means of marshalling and distributing the assets of the company under court supervision while avoiding preference to certain creditors. What does that mean? The court went on. The statutory scheme and the rule of order section 205 of the code also limit the liquidator and trial court in considering special circumstances, providing preferential treatment, or otherwise fashioning some form of equitable relief. That's what controls the liquidator in determining when a claim comes in, what level of priority it is. It's what controls the liquidation court in determining when a recommendation is made, what level of priority a claim gets, special circumstances about allegations that someone acted unreasonable, or even allegations about how much would be paid out cannot be considered in determining what priority level you were at. It may be there are going to be general creditors claims at level D that do not get paid out in this liquidation. That doesn't allow any of those parties to come to the liquidator or to the liquidation court and say, hey, look, under these special circumstances, I should actually get bumped up to level A. That's not allowed, and I think the circuit court recognized that in finding that their claim was a level G under the plain language of the statute based on the fact that the entirety of American Reinsurance finding that reinsurance agreements are just like any other contract claim. Any other questions from the panel? No. Thank you. Ms. Arnold, do you have five minutes for a reply? And again, I'll ask you to try to speak right into the microphone, all right? I'm going to start by addressing Justice Lyle's question. The statute provides that the director will give written notice of dependency of a claim   proceeding within a reasonable time after the claim is filed. That's the claim filed within a reasonable time after the claim is filed. That is the principle in the liquidation. We did not receive notice until after the claims had already been fully adjudicated and, in fact, most of them had already been paid before we actually received notice of them. And that fact, the fact that the liquidator violated its statutory notice obligation is not up for discussion.  that, again, is why, excuse me, the, we're not saying that the cost judgment should be awarded cost and expenses of administration level, priority level A. We're not saying it deserves that because it was unreasonable for the liquidator to bring the claim. Well, the fact that the, the fact that, excuse me, let me start again, the fact that the liquidator brought an unreasonable claim is the basis for the award. It's not the basis for the priority. The basis for the priority is based on was this cost judgment, did it arise in the course of the administration of the estate? And the answer is yes here. Every single aspect of this cost judgment, everything that actually led up to the obligation of the liquidator to pay Catalina occurred after the liquidation and occurred as a direct result of the conduct of the liquidator. And there is that distinction between pre-liquidation debts that are incurred by the company and post-liquidation debts incurred by the liquidator in its administration of the estate. The statute is clear. Those costs that are incurred in administration of the state, whether they benefit the estate, whether they don't benefit the estate. It just says costs and expenses of administration are level A. The legislature has made a policy decision. They chose not to put any kind of restriction in there saying we're only going to pay expenses that benefit the estate. And they could have because there is case law interpreting this exact language. The language of the Illinois statute is based on the U.S. Bankruptcy Act and the United States Supreme Court has held that any cost resulting from the liquidator's direct action to benefit the estate is a cost and expense of administration. The Illinois legislature was aware of this case when it adopted the statute and it made no changing to the wording. So then if the liquidator had not filed for the arbitration then and you had a claim that Catalina had the claims that they had, they would have been claims of general creditors and they would have been under level G but for the arbitration that was initiated by the liquidator. That's correct. And moreover we would actually not have been here at all. We would not have been here at all. We would have just been hanging out in Bermuda. Yeah. When Catalina purchased the LEIA, we purchased it after all of the after the deadline for timely file claims, no claims were filed, they were not showing any premium that was  And the reason that the arbitration happened, it's because the liquidator failed to give us notice, failed to give us a level playing field. We couldn't file a timely file claim because the liquidator didn't tell us about the claims until long after the deadline. The steps here were caused by the  failing to give us         the claims until long after the deadline. And the liquidator didn't tell us about the claims until long after the             long after the deadline. And the reason that the liquidator didn't tell us about the claims until long after the deadline.